UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MILTON LEWIS, #830791,

        Petitioner,               Case No. 15-cv-12261

v.                                         Honorable Thomas L. Ludington

CARMEN PALMER,

        Respondent.
_____/

**OPINION AND ORDER DENYING AND DISMISSING WITH PREJUDICE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Milton Lewis filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 19, 2015. Petitioner is serving a sentence of life imprisonment, as well as lesser terms, for his Wayne Circuit Court convictions of two counts of first-degree murder, Mich. Comp. Laws § 750.316; one count of assault with intent to commit murder, Mich. Comp. Laws § 750.83; three counts of armed robbery, Mich. Comp. Laws § 750.529; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.224b. The petition raises a single claim: insufficient evidence was presented at trial to sustain Petitioner's conviction for first-degree murder. The petition will be denied because Petitioner's claims are without merit. A certificate of appealability and leave to proceed *in forma pauperis* on appeal will also be denied.

**I.**

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On April 25, 2011, defendant entered the St. John Eastwood Clinic Connor House, a drug and alcohol rehabilitation facility in Detroit, Michigan. Inside, defendant fatally shot Milford Reed, robbed and fatally shot Ricky Charles, robbed and assaulted Terence Ross, and robbed Gregory Walton. Several hours before the murders, defendant sent a series of text messages to Gus Mills, who lives adjacent to the Connor House, instructing Mills to leave town, that Mills would be "the last one standing," and that defendant was going to "deal" with the residents of Connor House on their "own terms."

*People v. Lewis*, No. 310295, 2013 WL 5762994, at *1 (Mich. Ct. App. Oct. 24, 2013).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, which raised the following claim:

> I. The United States Constitution requires that Appellant's convictions for first degree murder premeditated be vacated since there was legally insufficient evidence to support a guilty verdict.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Lewis*, 2013 WL 5762994, at *1, 3. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claim as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the court. *People v. Lewis*, 843 N.W.2d 907 (Mich. 2014) (unpublished table decision).

## II.

Title 28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 103 (internal quotation marks omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.

### III.

Petitioner claims that insufficient evidence was presented at his jury trial to sustain his conviction for first degree murder. Specifically, he argues that the prosecutor failed to prove that the murders were premeditated. This claim was presented to the Michigan Court of Appeals during Petitioner's direct appeal, and the state court found that it lacked merit. Respondent argues that the state court reasonably rejected the claim on the merits, and therefore habeas relief is barred under § 2254(d).

A "daunting, doubly deferential standard of review" applies to a sufficiency-of-the-evidence inquiry on habeas review. *Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015). First, a reviewing court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Second, even if the reviewing court concludes that a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, it "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id*.

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. "To establish first-degree premeditated murder [in Michigan], the prosecution must prove that the defendant intentionally killed the victim and the act of killing was deliberate and premeditated." *People v. Haywood*, 530 N.W.2d 497, 503 (Mich. Ct. App. 1995).

The elements in dispute here are premeditation and deliberation. Under state law, "[t]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Morrin*, 187 N.W.2d 434, 449 (Mich. Ct. App. 1971) (footnote omitted). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look at his actions. This time interval may be minimal." *People v. Gonzalez*, 444 N.W.2d 228, 230 (Mich. Ct. App. 1989) (internal citation omitted). "[P]remeditation and deliberation may be inferred from all the facts and circumstances surrounding the incident, including the parties' prior relationship, the actions of the accused both before and after the crime, and the circumstances of the killing itself." *Haywood*, 530 N.W.2d at 503 (internal

citations omitted). Premeditation may also be inferred from "the type of weapon used and the location of the wounds inflicted." *People v. Berry*, 497 N.W.2d 202, 204 (Mich. Ct. App. 1993).

Review of the trial record supports the state court of appeals' conclusion. Notably, one of the prosecution witnesses, Gus Mills, testified that hours before the murders, he received a text message from Petitioner indicating that he wanted Mills to leave the area of Conner House, leave a door unlocked, that Petitioner would deal with the residents at Conner House on their terms, and that Mills would be the last one standing. *See* Dkt. 9-7, pp. 86-89. If the text message was at all unclear about what Petitioner intended to do, he resolved any ambiguities by his actions the next day.

Terrence Ross testified that Petitioner arrived at Conner House on the day of the incident and seemed agitated and paranoid. *Id*. at 34. Petitioner said he was there to pick up a check from the program manager. Ross tried to convince Petitioner to reenter the program, but it seemed to Ross that Petitioner was not listening to anything he said.

Meanwhile, Gregory Walton and Ricky Charles were in the pool room in the basement, and Milford Reed was in the basement television room. Walton testified that he heard shots, and then he saw Petitioner enter the pool room wearing gloves and brandishing a handgun. *Id*. at 67. Petitioner demanded that Walton and Charles turn over their money. *Id*. at 68. Charles put less than a dollar's worth of change on the pool table, and so Petitioner immediately shot Charles in the face, telling him "that ain't shit." *Id*. at 69. Walton had four twenty-dollar bills to give Petitioner. Petitioner took the money and told Walton to "keep his mouth shut, and get out of town." *Id*. at 70. Walton fled the building and called for help. *Id*. at 71. The shots Walton initially heard most likely came from the television room, where the other murder victim, Reed, was found. Reed was shot at close range directly into his left eye. *Id*. at 122.

At some point during the incident, Petitioner went upstairs and approached Ross in his bedroom and demanded money. Ross scrambled around his room but could not locate his money. As he scrambled, Petitioner shot him multiple times in the hand, arm, and head. *Id*. at 39. Eventually, Petitioner took Ross's pack of cigarettes and left. Ross then went outside where he and Charles, bleeding from their wounds, tried to wave motorists down for help.

Given this record evidence, even on direct review Petitioner's claim bordered on frivolous. Viewed most favorably to the prosecution, as the *Jackson* standard requires, Petitioner's texts the night before the shooting indicated that he planned to return to Conner House to rob and murder the residents. He warned Ross that he would be last man standing, and then hours later he shot three people in the head in an episode that must have lasted several minutes. The evidence presented at trial therefore easily allowed a rational fact-finder to conclude beyond a reasonable doubt that Petitioner acted with premeditation and deliberation when he killed the two deceased victims. Without question, the adjudication of this claim by the state courts did not involve an unreasonable application of the clearly established Supreme Court standard. The petition will therefore be denied.

## IV.

The petition for a writ of habeas corpus will be denied. Petitioner will also be denied a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional

claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*. at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Dell v. Straub*, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). Because Lewis has not made a substantial showing of the denial of a constitutional right he is not entitled to the issuance of a certificate of appealability on this claim. *See Heidelberg v. Illinois Prisoner Review Bd.*, 163 F.3d 1025, 1025-1027 (7th Cir. 1998). The Court will also deny Petitioner leave to proceed *in forma pauperis* on appeal because the appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

**V.**

Accordingly, it is **ORDERED**, that the petition for a writ of habeas corpus is **DENIED and DISMISSED with prejudice**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to proceed *in forma pauperis* on appeal is **DENIED**.

Dated: March 16, 2016              s/Thomas L. Ludington
                                   THOMAS L. LUDINGTON
                                   United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 16, 2016.

                                   s/Michael A. Sian
                                   MICHAEL A. SIAN, Case Manager